IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LINDA FAYE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:11cv947-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

The plaintiff, Linda Faye Davis ("Davis"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

judgment. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Davis was 52 years old at the time of the hearing before the ALJ, and she has completed the twelfth grade. (R. 30). Following the hearing, the ALJ concluded that Davis has severe impairments of fibromyalgia, sciatica, arthritis and pain in her joints

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

"all the time." (R. 15). The ALJ concluded that the plaintiff was unable to perform her past relevant work as a stocker, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, he also concluded that there were significant number of jobs in the national economy that the plaintiff could perform. (R. 22-23). Thus, the ALJ concluded that the plaintiff was not disabled. (R. 23).

    **B. Plaintiff's Claims.** Davis presents four issues for the Court's review. As stated by Davis, they are as follows:

1. The Commissioner's credibility finding is not based on substantial evidence.

2. The Commissioner failed to provide good cause for rejecting treating physician's opinion.

3. The new evidence submitted to the Appeals Council warrants remand.

4. The Commissioner erred in properly evaluating the claimant's RFC.

(Doc. # 14, Pl's Br. at 7-16).

### IV. Discussion

The plaintiff raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of the plaintiff's specific arguments because the court concludes that the ALJ erred as a matter of law, and, thus, this case is due to be

remanded for further proceedings.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphasis added).  The ALJ's written decision fails to state reasons as required by the regulations.

During the administrative hearing, Davis testified that she suffers fibromyalgia and osteoarthritis. "I have pain in my joints all the time." (R. 32).  She testified that she has been treated at FirstMed in Dothan, Alabama, for many years for her chronic pain. (R. 33-34). She suffers from pain in her knees, shoulders, neck, feet, and hands on a daily basis. (R. 33-35).

The law is very well-established in this circuit.  The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  If the Commissioner fails to articulate reasons for refusing to credit a claimant's

subjective pain testimony, then the Commissioner has, as a matter of law, accepted the testimony as true. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991); *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986).

Moreover, "[p]ain is clearly a non-exertional impairment that limits the range of jobs the claimant can perform." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995); *Walker*, 826 F.2d at 1003 ("Pain is a nonexertional impairment."). *See also Phillips*, 357 F.3d at 1242 fn 11 ("Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include . . . pain limitations. . .") Furthermore, in this circuit, pain itself can be disabling. *See Foote*, 67 F.3d at 1561; *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate *reasons* for doing so, or the record must be obvious as to the credibility finding. *Foote*, 67 F.3d at 1561-62; *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing

court).

After reciting the law, the ALJ regurgitated Davis' statements and testimony regarding her pain. He then acknowledged that Davis has impairments that would reasonably be expected to produce the symptoms about which she complains, but the ALJ then concluded that her statements were not credible "to the extent that they are inconsistent" with his residual functional capacity determination. (R. 19). In discrediting Davis' testimony, the ALJ's credibility determination, in its entirety, is as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(*Id.*).

The ALJ wholly fails to articulate any reason for discounting the plaintiff's *credibility* or *her pain testimony*. The ALJ's determination amounts to nothing more than a recitation of the applicable law, and a conclusory finding. There is no analysis whatsoever, leaving the court to guess at the ALJ's specific reasons for discounting Davis' testimony. The ALJ simply recounts what Davis reported. He does not evaluate her testimony or articulate any reasons for discrediting it. The ALJ's conclusory credibility and pain analyses are simply deficient as a matter of law. It is the responsibility of the ALJ to conduct the appropriate legal analysis, and his written decision must include sufficient reasoning to permit the court to determine that he has done so. "In the absence of such a statement, it is impossible for a

reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981).

The ALJ then compounded his errors by failing to properly consider the medical records of Davis' treating physicians from FirstMed. An ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2. *See also Lawton v. Comm'r of Soc. Security*, 431 Fed. Appx. 830, 835 (11th Cir. 2011) (remand to the agency is required when the ALJ fails to properly determine weight and credibility of treating physicians' opinions.)

After reviewing the medical records, the ALJ gave

significant weight to the opinion of Dr. Christopher Ahmed,[4] who on July 8,

---

[4] The court notes that Dr. James Ballard interpreted Davis' MR scan, not Dr. Ahmed. (R. 278).

> 2010, noted magnetic resonance imaging of the lumbar spine . . . showed mild degenerative disc disease without evidence of disc bulge or herniation; mild hypertrophic changes of facet joints with evidence of synovitis; and no evidence of spinal stenosis . . .. The undersigned interprets the above to mean that claimant has no difficulties with her lower extremities.
>
> \*       \*       \*
>
> . . . The undersigned rejects the opinion of Oneil Culver, M.D., at Exhibit 7B that opined claimant has a very sedentary life style with inability to bend at the waist, squat, climb stairs, or stand for any significant time and claimant finds sitting upright unsupported by her elbows unbearable with claimant in constant pain throughout the day.

(R. 21).

The problem with the ALJ's determination is two-fold. First, the ALJ may not substitute his judgment for the judgments of Davis' treating physicians. By "interpreting" the MRI, he does just that. Next, and more importantly, while the ALJ rejects the opinion of Dr. Culver, the ALJ makes no findings whatsoever regarding Davis' *other* treating physicians.

The ALJ may disregard the opinion of a physician, provided that he states with particularity reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987). While the ALJ parroted portions of the medical evidence, he did not discuss the weight he assigns to that medical evidence. For example, Davis testified that she was been treated at FirstMed for over twenty years. (R. 33). The medical records from FirstMed demonstrate that Davis was first complained of pain in her feet and legs on January 28, 2008. (R. 264) She was diagnosed with fibromyalgia on September 11, 2008. (R. 265-66).

9

On March 29, 2010, Davis was treated for knee pain. (R. 276-77) She had difficulty standing from a squatting position. (*Id*.) She had tenderness to palpation "along medial and lateral aspects of both knees." (*Id*.) She was prescribed Tramadol for pain. (*Id*.) On April 26, 2010, she was again treated for knee pain, and diagnosed with osteoarthritis in her knees. (R. 276). On July 6, 2010, she was treated for low back pain as well as pain in her lower back, hips, thighs and legs. (R. 274-75). She displayed tenderness over the lower lumbar region and over both SI joints. She had a reduced range of motion, and pain on forward flexion and lateral bending. (*Id*.) On July 14, 2010, Dr. Owens at FirstMed noted that Davis had some "hypoesthesia over L5,"[5] and prescribed Neurontin. (R. 274).

On March 24, 2010, Davis presented to FirstMed complained of knee pain and pain on bending or lifting. (R. 256). Dr. Fountain noted that Davis' bilateral knee pain was worsening and injected her with Decadron. (R. 258). On July 1, 2010, Davis complained for "constant leg and back pain." (R. 254).

Despite this longitudinal treatment history, the ALJ completely ignores this medical evidence which contradicts his interpretation that Davis "has no difficulties with her lower extremities." The ALJ is not free to simply ignore medical evidence, nor may he pick and choose between the records selecting those portions which support his ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury*, 957 F.2d at 840-841.

---

[5] Hypoesthesia refers to a lack of sensation or reduced sensitivity.

A mere statement that the ALJ carefully considered all the testimony and exhibits is not sufficient to comply with his duty to state with particularity the weight given to different medical evidence and to provide his reasoning for his decision. *Sharfarz*, 825 F.2d at 279; *Cowart*, 662 F.2d at 735.  The ALJ does not explain what specific evidence he relies on, what weight he gives the evidence and why he relies on some evidence but not other evidence.  Although the ALJ finds that the plaintiff suffers from the severe impairment of fibromyalgia, the ALJ does not discuss the effects of this impairment on Davis' ability to work.  Consequently, the court cannot ascertain from the ALJ's decision what consideration, if any, the ALJ gave to the effect of  Davis' fibromyalgia on her ability to work.  *See generally Dempsey v. Comm'r of Soc. Security*, 454 Fed. Appx. 729, 733-34 (11th Cir. 2011) (ALJ did not consider fibromyalgia and its symptoms on claimant's ability to work).  Without an explanation of the weight accorded by the ALJ to all of the various medical opinions and evidence, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.  *Id.*

Finally, because the ALJ did not delineate what evidence he considered, it is impossible for the court to determine whether the vocational expert considered all of the plaintiff's impairments when testifying about her abilities.  The ALJ determined that Davis has the residual functional capacity to perform light work with mild postural limitations, and "should not be hazards (sic) of heights or machinery." (R. 16).  Unfortunately, the ALJ makes no more specific findings regarding Davis' residual functional capacity taking into

consideration the effects of her fibromyaglia or pain on her ability to stand, squat and walk, or on her ability to lift, reach, handle or carry. At the administrative hearing, the ALJ posits the following hypothetical question to the vocational expert.

> Q: Assume I find a hypothetical individual, the same age as Ms. Davis, the same educational level and vocational ability. In addition, I find that following additional limitations, that this hypothetical individual can perform a full range of light work with mild or moderate postural limitations with mild manipulative limitations, environmental limitations would be avoiding hazardous, dangerous machinery and heights and there would be no mental limitations. Given those limitations, would this hypothetical person be able to perform the work in which Ms. Davis previously performed?
>
> A: Yes sir.
>
> Q: Given the same limitations, would there be any jobs in this region and the nation that such a hypothetical person could perform?
>
> A: Yes sir.

(R. 39-40).

Although the ALJ relied on the testimony of the vocational expert to determine that Davis is not disabled, the court is unable to determine what evidence the ALJ relied upon to reach his RFC determination. Consequently, the court cannot determine whether the ALJ's residual functional capacity determination is supported by substantial evidence, and doubt is necessarily cast upon the vocational expert's testimony and the ALJ's conclusion that the plaintiff is not disabled

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting

benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).

> The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking. It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad. *Id*. The regulations also make the nature of the SSA proceedings quite clear. They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner." 20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).

For these reasons, the court concludes that the Commissioner erred as a matter of law, and that the case should be remanded for further proceedings. And, since this case must be remanded, the plaintiff will have an opportunity to present updated evidence to the ALJ, including the evidence submitted to the Appeals Council.

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have sixty (60) days after she receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008). A separate final judgment will be entered.

Done this 3rd day of October 2012.

                                              /s/Charles S. Coody
                                        CHARLES S. COODY
                                        UNITED STATES MAGISTRATE JUDGE